[829 NE2d 1192, 797 NYS2d 24]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEPHEN G. SCHULZ, Appellant.

Argued March 30, 2005; decided May 5, 2005

**POINTS OF COUNSEL**

*William E. Hellerstein,* Brooklyn, *Marjorie M. Smith* and *Daniel S. Medwed* for appellant. I. Appellant's federal and state constitutional rights to present a defense were violated by the trial court's refusal to allow him to introduce evidence that another person may have been the actual perpetrator of the El

Classico robbery. (*People v Primo,* 96 NY2d 351; *Taylor v Illinois,* 484 US 400; *Pennsylvania v Ritchie,* 480 US 39; *Chambers v Mississippi,* 410 US 284; *United States v Robinson,* 544 F2d 110; *People v Crimmins,* 38 NY2d 407.) II. The evidence against appellant was insufficient as a matter of law and renders his conviction a violation of his right to due process of law. (*People v Calabria,* 3 NY3d 80; *People v Contes,* 60 NY2d 620; *Jackson v Virginia,* 443 US 307; *People v Lee,* 96 NY2d 157; *United States v Wade,* 388 US 218.) III. The denial, without a hearing, of appellant's motion to vacate his judgment of conviction on the basis of newly discovered evidence was an abuse of discretion as a matter of law and violated his rights to due process of law. (*People v Salemi,* 309 NY 208; *People v Hildenbrandt,* 125 AD2d 819; *People v Collins,* 173 Misc 2d 350, 250 AD2d 379; *People v Santos,* 1 NY3d 548; *People v Baxley,* 84 NY2d 208; *People v Fields,* 66 NY2d 876; *People v Brown,* 56 NY2d 242; *People v Crimmins,* 38 NY2d 407; *People v Calabria,* 3 NY3d 80; *People v Cole,* 1 Misc 3d 531.) IV. Should the court reject point III because of a lack of due diligence on trial counsel's part, it should hold that appellant was deprived of his federal and state constitutional rights to the effective assistance of counsel because defense counsel did not sufficiently investigate the possibility that another person committed the crime. (*McMann v Richardson,* 397 US 759; *Strickland v Washington,* 466 US 668; *People v Henry,* 95 NY2d 563; *People v Benevento,* 91 NY2d 708; *Wiggins v Smith,* 539 US 510; *People v Bennett,* 29 NY2d 462; *People v Bell,* 48 NY2d 933; *People v Droz,* 39 NY2d 457; *People v LaBree,* 34 NY2d 257; *Eze v Senkowski,* 321 F3d 110.)

*Thomas J. Spota, District Attorney,* Riverhead (*Anne E. Oh* of counsel), for respondent. I. The unanimous jury verdict convicting defendant of robbery in the first degree was proper in all respects. (*People v Leonti,* 18 NY2d 384; *People v De Tore,* 34 NY2d 199; *People v Cerullo,* 18 NY2d 839; *People v Lobel,* 298 NY 243; *People v Martin,* 50 NY2d 1029; *People v Calabria,* 3 NY3d 80; *People v Lee,* 96 NY2d 157; *People v Contes,* 60 NY2d 620; *Jackson v Virginia,* 443 US 307; *People v Malizia,* 62 NY2d 755, 469 US 932.) II. The trial court properly prohibited defense counsel from showing an unauthenticated photograph to the jury. (*People v Gray,* 86 NY2d 10; *People v Hines,* 97 NY2d 56; *People v Finger,* 95 NY2d 894; *People v Norman,* 85 NY2d 609; *People v Primo,* 96 NY2d 351; *People v Feldman,* 299 NY 153; *People v Nitzberg,* 287 NY 183; *People v Ventimiglia,* 52 NY2d 350; *People v Austin,* 112 AD2d 242; *Taylor v Illinois,* 484 US 400.) III. Although it is beyond the court's review, the trial

court's discretionary denial of defendant's postconviction motion to vacate on grounds of newly discovered evidence was appropriate. (*People v Santos,* 1 NY3d 548; *People v Fields,* 66 NY2d 876; *People v Crimmins,* 38 NY2d 407; *People v Brown,* 56 NY2d 242; *People v Baxley,* 84 NY2d 208; *People v Smith,* 63 NY2d 41; *People v Salemi,* 309 NY 208; *People v Welcome,* 37 NY2d 811; *People v Zambrana,* 142 AD2d 744; *People v Mendez,* 147 AD2d 712.) IV. Defendant was not deprived of effective assistance of counsel at trial. (*People v Hobot,* 84 NY2d 1021; *People v Clark,* 254 AD2d 299; *People v Jackson,* 70 NY2d 768; *People v Flores,* 84 NY2d 184; *People v Benevento,* 91 NY2d 708; *People v Baldi,* 54 NY2d 137; *People v Ellis,* 81 NY2d 854; *Strickland v Washington,* 466 US 668; *People v Vilardi,* 76 NY2d 67; *People v Rivera,* 71 NY2d 705.)

## OPINION OF THE COURT

G.B. SMITH, J.

There are two primary issues before us on this appeal. First, defendant alleges that the trial court abused its discretion in denying third-party culpability evidence that would have shown that someone other than defendant committed the robbery charged in the indictment (*see People v Primo,* 96 NY2d 351, 356-357 [2001]). Second, defendant also contends that the People failed to prove his guilt of the crime of robbery, first degree beyond a reasonable doubt. We reject both contentions and affirm the order of the Appellate Division.[1]

## Facts

A jury convicted defendant of robbing the El Classico Restaurant in Brentwood, New York. One of the two persons in the restaurant, Jose Vasquez, the owner and cook, identified defendant at trial. The second witness, an employee at the restaurant, Otilia Ruiz, failed to identify defendant at trial.

At approximately 8:20 P.M. on February 3, 1999, defendant entered the restaurant, asked for a menu and ordered a shrimp dinner. He subsequently went to the kitchen door to ask how long it would take to prepare the meal. Velasquez responded 10 to 15 minutes. Thereafter, Velasquez came out of the kitchen

---

1. While defendant additionally seeks relief on the ground of newly discovered evidence, "[t]his [C]ourt . . . has no power to review the discretionary denial of a motion to vacate judgment upon the ground of newly discovered evidence" (*People v Crimmins,* 38 NY2d 407, 409 [1975]; *see also People v Smith,* 63 NY2d 41, 66 n 4 [1984]; *People v Brown,* 56 NY2d 242, 246 [1982]).

and went over to Ruiz who was standing behind the cash register in the bar area. He asked Ruiz what she was doing with the dollar bill in her hand, and she responded that the customer (defendant), who was also in the bar area, wanted change.

Ruiz testified that after Velasquez returned to the kitchen, the customer went to the cash register, opened it and began taking money. Ruiz grabbed the robber by the shirt, told him not to take the money and screamed to Velasquez that they were being robbed. The robber pulled out a knife and held Ruiz by the neck with his other hand. Velasquez heard Ruiz scream. He came out of the kitchen and saw the defendant leaving the restaurant. Velasquez described the defendant as a "white male, tall, like 6'2", heavy, weigh like 250, 275." He described the defendant as having chestnut colored hair. Velasquez also described the car as "like Chevy or Oldsmobile or Buick, four door, 2-tone, brown on the bottom, beige on the top." This description matched the car of defendant's roommate, Anthony Tralongo.[2] Velasquez attempted to follow the car but lost it after a few blocks.

Also on February 3, 1999, Ruiz gave a statement to Detective Conde of the Suffolk County Police Department describing the robber as a "big white guy" wearing blue docker type pants, a blue striped shirt, and brown work boots. She also told the police that defendant was "very large, about 6' 2," 250-275 pounds, clean shaven, rotten teeth, and bad breath and dark hair.

On the day following the robbery, both Velasquez and Ruiz identified defendant from a photograph of six white men. Based on the descriptions, the detectives went to defendant's home where they saw a two-toned brown Chevrolet Celebrity in the driveway. The detectives arrested the defendant and impounded the car, which belonged to his roommate. Several days later, Velasquez identified the car at the police precinct where the police had placed it among 20 other cars.

At trial, Velasquez, in addition to testifying about the facts of the robbery, also testified to selecting defendant from two lineups of six men, all in white jumpsuits. According to testimony by Detective Gieck, defendant was allowed to select his number in the lineup. The lineups occurred sequentially. In

---

**2.** During the cross-examination of Velasquez and Detective Gieck, defense counsel brought out that Velasquez had told the police that the getaway car had a license plate with a "1" and a "T" but this did not match the license plate in the defendant's driveway.

the first lineup, he selected number three and in the second, number six. According to the detective, defendant was selected both times by Velasquez as the robber of El Classico Restaurant.[3]

At trial the arresting officer, Detective Gieck, testified that Velasquez told him on the night of February 3, 1999, that the person who robbed his restaurant was "a big white male, 250 pounds." Defense counsel asked defendant to stand up and asked Detective Gieck how much his client appeared to weigh. The detective replied "about 250 pounds." Defense counsel also asked Detective Gieck about a string of robberies being investigated in a nearby precinct at the time of the El Classico robbery. The detective indicated that the perpetrator of those robberies weighed over 450 pounds.

Defense counsel also had a newspaper photo of a third party marked for identification as Exhibit E. The detective was shown the picture of Guilfoyle but did not recognize it. Ruiz, however, failed to make a positive identification, and in fact did not identify defendant as the person who robbed the restaurant. On the People's application, defendant was required to stand and show his teeth to the jury so that they could make an analysis of whether or not the teeth were rotten and chipped.

Defendant chose not to cross-examine Ruiz and, thus, did not show her a picture of Guilfoyle. At the end of Ruiz's testimony, defendant made a motion to dismiss based upon insufficient evidence, which was denied. Defendant next made an offer of proof to enter a newspaper photograph of Anthony Guilfoyle, who defendant claims is the actual robber of the restaurant. Counsel claimed that because Guilfoyle had robbed two or three establishments in the area prior to February 3, 1999 and two or three after February 3, 1999, and because he resembled the description of the robber given by Velasquez and Ruiz, there was a chance that Guilfoyle was the robber. To lay a foundation for the photograph, defendant offered to call the police officers, who made the arrests in the Guilfoyle case, to describe the prior robberies, and the indictment against Guilfoyle. The officers were produced on September 2. Prior to any testimony from the officers, the court ruled that it would not permit the photograph into evidence because there was no evidence linking that person to the restaurant robbery. The defense attorney then stated

---

**3.** Prior to trial, a *Wade* hearing was held on April 7 and April 15, 1999, and the motions to suppress the lineup identifications of defendant were denied.

that the defendant would not put in a case and would not call the officers.

Defendant was convicted of first degree robbery and sentenced to a determinate term of 11 years. On June 14, 2000, defendant moved pro se in the trial court to vacate his conviction on the basis of ineffective assistance of counsel, and on the basis that the prosecution failed to prove his guilt beyond a reasonable doubt (*see* CPL 440.10 [1] [h]). On September 5, 2000, the trial court denied the motion.

On February 10, 2003, Supreme Court also denied defendant's CPL 440.10 (1) (g) motion to vacate the conviction based on newly discovered evidence, concluding that the affidavit made in support of the motion, in which Ruiz stated that she is "90%" certain that Guilfoyle is the person who robbed her, was not newly discovered, and that defense counsel had the opportunity to use the photograph of Guilfoyle at trial to cross-examine her but chose not to. Supreme Court wrote:

> "Here, the 'newly discovered evidence' offered by the defendant consists of an affidavit in which Otilia Ruiz states that the defendant was not the robber, and that she is 90% certain that Anthony Guilfoyle was the true perpetrator. Although the defendant contends that this evidence would probably change the result if a new trial is granted, the court is not convinced that such is the case. Ruiz essentially testified at trial that the defendant was not the robber, and the jury nevertheless found the defendant guilty based on identification testimony by Jose Velasquez. It is by no means probable that Ruiz's ability to identify Guilfoyle as the robber would have affected the jury's assessment of the identification testimony."

Moreover, there is no evidence that the picture revealed the rotten teeth that Ruiz noted in her description of the robber.

Defendant appealed to the Appellate Division which, on March 29, 2004, affirmed the conviction and affirmed both orders denying defendant's CPL 440.10 motions to vacate the judgment of conviction. The Appellate Division found that the evidence against defendant was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt" (*see People v Schulz*, 5 AD3d 799, 800 [2d Dept 2004]). Further, the Appellate Division determined that defendant had not proffered newly discovered evidence and that the motion to vacate the conviction was properly denied without a hearing.

A Judge of this Court granted defendant leave to appeal.

## Discussion

*People v Primo* (96 NY2d 351, 356 [2001]), which held that before permitting evidence that another party committed the crime for which a defendant is on trial, the court must balance the probity of the evidence against the prejudicial effect to the People, is determinative of this appeal. In that case, this Court reversed a conviction for attempted murder in the second degree based upon the trial court's exclusion of ballistics evidence tied to another person who was present at the scene. This Court stated (at 357), "The admission of evidence of third-party culpability may not rest on mere suspicion or surmise." The concern is that the evidence of third-party culpability will cause "undue prejudice, delay and confusion" of the evidence presented to the jury. In order to determine whether the evidence will be admitted, the court must allow the defense "to make an offer of proof outside the presence of the jury to explain how it would introduce evidence of third party culpability." Then, the court must allow the prosecutor to make counter-arguments.

In the case at bar, the court allowed the defense to make a proffer of evidence concerning the photograph outside the presence of the jury concerning how he would lay a foundation to enter the photograph of Guilfoyle. The prosecution countered that there was no foundation for entering the photograph. The court, after hearing the defense, determined that there was no "sufficient nexus between that suspect or the person that you say committed the crimes, and this crime, to show that that person committed this particular crime." However, the court stated it would allow the defense to call two officers to testify concerning the photograph of Guilfoyle, but defendant in the end chose not to call those witnesses. Moreover, Ruiz was not cross-examined and was not shown Guilfoyle's photograph.

Defendant offers no evidence which shows a modus operandi, a witness who saw Guilfoyle at the scene or even a connection between the getaway car and Guilfoyle. What defendant offers on this appeal is a Newsday article, dated March 10, 1999, which describes Guilfoyle's crime spree, and the affidavit of Ruiz, dated March 10, 2002, taken three years after the crime was committed, Ruiz's inability to identify defendant at trial as the robber, a picture which allegedly shows that defendant and Guilfoyle resemble one another, and the fact that Guilfoyle commit-

ted several robberies in the vicinity of El Classico around February 3, 1999.[4]

■ Unlike in *Primo*, where the alleged suspect was at the scene of the crime, identified as the shooter, and where the ballistics report matched a gun of the person who defendant said committed the crime, here there is no evidence linking Guilfoyle to the crime at El Classico. "While evidence tending to show that another party might have committed the crime would be admissible, before such testimony can be received there must be such proof of connection with it, such a train of facts or circumstances as tend clearly to point out someone besides the prisoner as the guilty party" (*see Greenfield v People*, 85 NY 75, 89 [1881]). "Remote acts, disconnected and outside of the crime itself, cannot be separately proved" to show that someone other than the defendant committed the crime (*see id.*). In the circumstances of this case, the trial court did not abuse its discretion in determining that the photograph of Guilfoyle would have caused undue delay, prejudice and confusion, and properly precluded the evidence.

Insufficient Evidence

Defendant argues that the evidence against him was insufficient and that his CPL 440.10 (1) (h) motion should have been granted. The standard for sufficiency of evidence is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found essential elements of the crime beyond a reasonable doubt" (*see Jackson v Virginia*, 443 US 307, 319 [1979] [citation omitted]; *see also People v Jennings*, 69 NY2d 103, 114 [1986]).

■ Under Penal Law § 160.15, the jury had to find that defendant forcibly stole property, and in the course of the commission of the crime or immediate flight therefrom, he or another

---

4. The dissent highlights the "extraordinary proximity in time and place of Guilfoyle's crimes compared with the El Classico robbery" and points out that Guilfoyle was charged with robberies of small businesses only miles away (dissenting op at 532). Miles away, however, is hardly "extraordinary proximity" in the suburbs of Suffolk County, which are densely inhabited by people and small businesses. Moreover, the dissent states that the defense could have established "a foundation by testimony from the detectives who had worked on the Guilfoyle cases" (dissenting op at 533). Perhaps, but it chose not to. The dissent fails to recognize that the People produced both detectives in court the day after defense counsel's request. Defense counsel, however, chose to rest its case, stating "[a]fter the time given to us by the Court to discuss the next phase of this trial with my client, I state to the Court we do not intend to call any witnesses on behalf of the defendant."

participant in the crime used or threatened the immediate use of a dangerous instrument. In the case at bar, defendant is accused of entering El Classico Restaurant, taking money from the cash register and using a knife to accomplish the robbery. All acts, if found to be true, support a finding of robbery in the first degree.

Velasquez testified that he saw defendant in the restaurant and spoke with him, and then again saw him leaving the restaurant after having committed the robbery. He chased the defendant in his car. Velasquez identified defendant in a photo array, and in a police lineup. At trial, Velasquez pointed out the defendant as the one who had committed the crime. Ruiz testified that someone forcibly took money from the cash register where she was working and that this person had no authority to take the money. While she did identify defendant in a photo array the next day, she could not point out defendant at trial as the one who had committed the crime.

As we noted in *People v Arroyo* (54 NY2d 567, 578 [1982]) "the testimony of a single witness [can be enough] to support a conviction," noting that it is typically the province of the jury to determine a witness' credibility (*see also People v Contes*, 60 NY2d 620, 621 [1983] [defendant identified by tattoos enough evidence to convict]).

When two eyewitnesses to a crime give conflicting testimony, it is the jury that must weigh the evidence and determine who to believe (*see People v Jackson*, 65 NY2d 265, 272 [1985] ["That two or more witnesses give conflicting testimony, however, simply creates a credibility question for the jury to be determined by them in the context of the entire body of evidence before them" (citation omitted)]; *see also People v Stewart*, 40 NY2d 692, 699 [1976] [it is different when the evidence comes from a single prosecution witness "who offer(s) irreconcilable testimony pointing in both directions to guilt and innocence"]; *People v Ledwon*, 153 NY 10, 18 [1897]). In the instant matter, the jury weighed the evidence and found Velasquez's identification of defendant to be credible.

## Ineffective Assistance of Counsel

In order to sustain a claim of ineffective assistance of counsel, New York courts examine the trial as a whole to determine whether defendant was afforded meaningful representation (*People v Benevento*, 91 NY2d 708, 713 [1998]). In the case at bar, defendant argues that trial counsel's failure to have

Anthony Tralongo, his roommate, testify as an alibi witness concerning his whereabouts on the evening of February 3, 1999, and failure to interview Ruiz prior to trial constitute ineffective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" (*see Strickland v Washington,* 466 US 668, 686 [1984]).

 ■ Here, there has been no showing that trial counsel was deficient in failing to provide a meaningful defense in light of the circumstances (*see People v Hobot,* 84 NY2d 1021, 1022 [1995] [claim for ineffective assistance of counsel failed; defendant did not meet "high burden of demonstrating that he was deprived of a fair trial by less than meaningful representation"]; *People v Flores,* 84 NY2d 184, 189 [1994] [defendant received meaningful representation]). The trial record indicates that defense counsel made a tactical decision not to call defendant's roommate after Ruiz failed to identify defendant. "Hindsight should not escalate what may have been a few tactical errors into ineffective assistance of counsel" (*People v Baldi,* 54 NY2d 137, 151 [1981]).

Accordingly, the order of the Appellate Division should be affirmed.

ROSENBLATT, J. (dissenting in part). Respectfully, I dissent from so much of the Court's decision as upholds the denial of defendant's CPL 440.10 (1) (g) motion without a hearing. On the record before us, the possibility of defendant's actual innocence is too high to justify denial of the CPL 440.10 motion without a hearing. The majority determined that the case is legally sufficient, and no one can quarrel with that. My discomfort stems from the combined effect of two rulings: the first, denying the introduction at trial of Guilfoyle's photograph; and the second, summarily denying defendant's posttrial motion after the primary victim, Ruiz (who at trial said defendant was not the robber), submitted an affidavit stating that she is 90% certain that the person in the photograph—Guilfoyle—was the robber. Coming on the heels of a borderline ruling disallowing Guilfoyle's photograph at trial, the affidavit is too potent to be cast aside.

I'll elaborate.

(1) As between Ruiz and Velasquez, Ruiz is the more important witness. She was the one whom the robber held at knife-

point. Velasquez did not testify that he saw the actual crime; he did not see it. He said he saw defendant in the restaurant. I do not discount his testimony or his identification of the car. It is important evidence and inferential enough to give the prosecution a legally sufficient case, but it is not as compelling as Ruiz's testimony combined with her posttrial affidavit.

(2) The majority states that defendant was arrested based on the descriptions of both Velasquez and Ruiz. On the record before us, however, we do not know how it came about that police suspicion settled on defendant. At oral argument, the People told us they did not know.

(3) The majority points out that Guilfoyle robbed two or three establishments before and two or three after the robbery in question. This characterization is accurate, but it does not emphasize, as I think it should, the extraordinary proximity in time and place of Guilfoyle's crimes compared with the El Classico robbery. Guilfoyle's arrest reports reveal that he was charged with a robbery the same night as the El Classico robbery, roughly three hours before the El Classico crime and only 10-12 miles away. Guilfoyle's other robberies occurred on January 27, 1999, at a small business fewer than three miles away from El Classico; then again, later in the evening on January 27, at another small business roughly five miles away from El Classico; again on February 1, at a small business 8-10 miles away; on February 5, at 5:45 P.M. roughly five miles from El Classico; and finally, on March 7, at another small business about five miles away.

There was also Guilfoyle's modus operandi: in each instance, he took money from the cash register of a small business by intimidating the worker and sometimes pretending to have a gun. The El Classico robber's method seems similar enough to Guilfoyle's technique that the connection should have been explored. I cannot agree with the majority that Guilfoyle's robberies were marked by "remoteness" from the one involved here.

Affirming both the conviction and the CPL 440.10 denial is disquieting, but not because *Primo (People v Primo,* 96 NY2d 351, 356 [2001]) created a rule that, if applied to a pre-*Primo* case, would call for a different result. *Primo* articulates a better test than the earlier "clear link" standard because it is less mechanical and allows the court, in a conventional way, to balance probative value against prejudice. The problem here would be much the same had *Primo* never been decided. *Primo*

implicitly recognized that a trial, if not properly constrained, could become skewed and the prosecution put to the impossible burden of having to disprove the guilt of everyone who, in a photograph, looks like the accused.

If that were allowed, a criminal case could deteriorate into a chaotic series of minitrials, one per photograph, given the ease with which defendants can find pictures of felons who resemble them (at least the ordinary defendant can, even if not this one). *Primo* should not be read as having opened that door. On the contrary, most judges, I suspect, had instinctively applied a *Primo* prejudice/probative value test without calling it that. We just gave it a better name, reminding judges that discretion is antithetical to rigidity and some rulings call for more elasticity than others.

This is all worth mentioning because of what happened at the trial. In refusing to let the jury see Guilfoyle's photograph, the court did not rule it prejudicial or valueless. Rather, the court considered whether a proper foundation had been proffered, which was the prosecution's only objection, and ruled that the photograph's connection to the case was too tenuous. It was a very close call.

In trying to get Guilfoyle's photograph into evidence, the defense pointed out that it could establish a foundation by testimony from the detectives who had worked on the Guilfoyle cases. The defense argued that the detectives' description would confirm that Guilfoyle's method of operation matched the El Classico crime. In response to the prosecution's challenge that Guilfoyle's appearance may have changed since the date of the photograph, the defense explained that the police officers would be able to describe any differences between the photograph and Guilfoyle's contemporary appearance. It was only after the defense had rebuffed the prosecution's foundation objection that the trial court, on its own, began wondering aloud whether a sufficient link existed between the photograph and the crime. The trial court based its ruling on the proper conclusion that a mere similarity of appearance would not suffice to make the photograph admissible. The court rejected the defense's protestations that the close proximity in time and place, coupled with the similarity of method, of Guilfoyle's crimes made the admissibility of the photograph rest on a good deal more than mere physical resemblance.

Had the court allowed the jury to see the photograph, no one could have justly criticized the ruling on "foundation" grounds

or as an exercise of discretion. But excluding Guilfoyle's photograph was within the court's discretion, and if that were all there was before us I would close the book on this case.

It's what happened afterward that's unsettling. By submitting a posttrial affidavit identifying Guilfoyle, Ruiz has, in hindsight, shaken the court's ruling barring the photograph. Her affidavit does not make the ruling wrong, or reversible, because we do not use hindsight to overturn trial judges' determinations. For that reason, I agree with the Court that reversal of the conviction is not now warranted.

The CPL 440.10 motion, however, should not have been denied without a hearing, and in my view it was an abuse of discretion to, in effect, reject the Ruiz affidavit out of hand. Rather than affirming the denial of a hearing, this Court should remand so that Ruiz can be called before the court, under oath, to give her a chance to see Guilfoyle under court-arranged auspices. The court could then determine whether the conviction was a miscarriage of justice. As a dissenter, of course, I cannot make this happen. It would seem to me, though, that there is nothing to be lost and everything to be gained if this chapter were fulfilled. The Guilfoyle photograph is too blurry to justify any kind of certainty. After seeing Guilfoyle in person, however, Ruiz may conclude that he is not the robber. If so, the case is over and justice is served. But if Ruiz insists that Guilfoyle is the man who robbed her, I should think that any right-minded prosecutor would want to know of it. Given the affirmance, the prosecutor's alternative is to do nothing and never put Ruiz to a test before the wise and experienced judge who heard this case. Given her affidavit, Ruiz's testimony at a CPL 440.10 hearing would necessarily produce an additional measure of truth. Prosecutorial inaction would be lawful, but regrettable. The interests of finality count for a great deal, and may be alluring, but they are not always consistent with the higher ends of justice.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and R.S. SMITH concur with Judge G.B. SMITH; Judge ROSENBLATT dissents in part in a separate opinion.

Order affirmed.