(July 30, 2009)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE T. OXLEY JR., Appellant. [883 NYS2d 385]—

Kane, J. Appeals (1) from a judgment of the County Court of St. Lawrence County (Richards, J.), rendered December 18, 2006, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of said court, entered December 24, 2007, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Following a lengthy trial, defendant was convicted of intentional murder in the second degree for beating the victim to death with a baseball bat. County Court imposed the maximum sentence and later denied, without a hearing, defendant's motion to vacate the judgment of conviction. Defendant appeals both his conviction and the denial of his postconviction motion. Of the myriad arguments defendant raises, we address only dispositive issues and some that could arise on a retrial.

The evidence was legally sufficient to support the conviction and the verdict was not against the weight of the evidence. While defendant contends that County Court committed numerous evidentiary errors, we must review the legal sufficiency and weigh arguments based only upon the evidence admitted at trial. Viewing the direct and circumstantial evidence in a light most favorable to the People, the jury could have rationally found that all of the elements of the crime were established beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349 [2007]; People v Grassi, 92 NY2d 695, 697 [1999]). Medical evidence showed that the victim was beaten in the head with multiple blows, causing death by blunt force trauma. Hours after the victim's death, the police found a baseball bat in defendant's basement. The bat had the victim's hair and blood

on it, as well as forensic evidence that was consistent with defendant's DNA. A neighbor testified that she saw defendant walking toward the victim's house on the night the victim died. Other witnesses testified that defendant was suffering from personal problems and a crack cocaine addiction, and he was upset with the victim for cheating him on recent drug transactions. An inmate testified that defendant made a jailhouse admission to the crime. This evidence was legally sufficient to support the conviction. While we find that a different result would not have been unreasonable, after weighing the conflicting testimony and competing inferences to be drawn therefrom, while giving deference to the jury's credibility determinations of the numerous witnesses—many of whom had dubious credibility—the verdict was not against the weight of the evidence (see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]; People v Heath, 49 AD3d 970, 972 [2008], lv denied 10 NY3d 959 [2008]).

County Court did not err in denying defendant's suppression motion. After defendant consented to a search of his home, both orally and in writing, he spoke to police officers and the acting District Attorney. While police were searching, defendant was moving freely about his house. During this time, defendant yelled out his window to a passing friend, "Hey, I need a lawyer in here." According to the acting District Attorney, defendant made this comment in a joking manner and they both laughed afterward. Defendant did not make this statement to a police officer or prosecutor, did not follow up on his alleged request for counsel with any official, and continued to move about his house and speak to the authorities in the same manner as before he yelled out the window. Considering all of the circumstances, the court reasonably found that defendant did not make an unequivocal request for counsel to the authorities (see People v Glover, 87 NY2d 838, 839 [1995]; People v Fridman, 71 NY2d 845, 846 [1988]; People v Thompson, 153 AD2d 456, 460-461 [1990], lv denied 76 NY2d 867 [1990]). Even if his statement was construed as a request for counsel, such request would not have invalidated the prior consent to search his house (compare People v Esposito, 68 NY2d 961, 962 [1986]; People v Loomis, 255 AD2d 916, 917 [1998], lv denied 92 NY2d 1051 [1999]; People v Tremblay, 77 AD2d 807, 807-808 [1980]). Additionally, defendant's later waiver of his Miranda rights would have overridden any noncustodial request for counsel (see People v Thompson, 153 AD2d at 461-462). His Miranda waiver was signed approximately an hour after he yelled out the window, he was still not in custody, had voluntarily agreed to accompany officers to the police station, was never handcuffed, was transported in the

front seat of an unmarked car, walked away from officers and spoke to a neighbor before getting into the car, and different officers obtained the *Miranda* waiver than had spoken to him at his house. Thus, even if his yelling out the window constituted a request for counsel, his noncustodial waiver of that request was attenuated and his subsequent statements were admissible (*cf. People v Chapple*, 38 NY2d 112, 115 [1975]; *People v Logan*, 19 AD3d 939, 941-942 [2005], *lv denied* 5 NY3d 830 [2005]; *see also People v Odell*, 26 AD3d 527, 528-529 [2006], *lv denied* 7 NY3d 760 [2006]).

County Court correctly received into evidence John Shannon's testimony from the preliminary hearing. Shannon was subject to cross-examination at the preliminary hearing but he died shortly thereafter, making him unavailable at the time of trial. Because an adequate opportunity for cross-examination was provided at the hearing, and any limitations were due to defendant's failure to fully avail himself of that opportunity, Shannon's preliminary hearing testimony was admissible at trial (*see* CPL 670.10; *People v Gilhooley*, 108 App Div 234, 236-237 [1905], *affd* 187 NY 551 [1907]; *People v Kizer*, 83 Misc 2d 58, 62-63 [1975]; *cf. Mancusi v Stubbs*, 408 US 204, 216 [1972]; *compare People v Simmons*, 36 NY2d 126, 130-131 [1975]). The trial court has discretion to permit or limit impeachment of an unavailable witness whose testimony is admitted into evidence (*see People v Bosier*, 6 NY3d 523, 528 [2006]). While the court here limited defendant's impeachment of Shannon, the court admitted certificates of conviction and some testimony that tended to impeach Shannon but was admissible on other issues. Thus, the court did not abuse its discretion in the scope of impeachment concerning Shannon.

County Court erred in excluding evidence of third-party culpability. Before permitting evidence that another individual committed the crime for which a defendant is on trial, the court is required to determine if the evidence is relevant and probative of a fact at issue in the case, and further that it is not based upon suspicion or surmise. Then, the court must balance the probative value of the evidence against the prejudicial effect to the People and may, in an exercise of its discretion, exclude relevant evidence that will cause undue prejudice, delay the trial, or confuse or mislead the jury (*see Holmes v South Carolina*, 547 US 319, 326-327 [2006]; *People v Schulz*, 4 NY3d 521, 528 [2005]; *People v Primo*, 96 NY2d 351, 355-357 [2001]). The proper procedure is for the court to allow the defense to make an offer of proof outside the jury's presence addressing its proposed evidence of third-party culpability, allow the People to

present counterarguments, then balance the aforementioned considerations and render a definitive ruling regarding what is admissible (*see People v Schulz*, 4 NY3d at 528; *People v Primo*, 96 NY2d at 357).

Here, defendant's proffer included testimony outside the jury's presence, as well as defense counsel's explanation of the proposed testimony of other witnesses. One witness would testify that she saw a man called Chase at the scene of the crime and threatening the victim only a few hours before the murder. Less than 48 hours prior to the murder, Chase had threatened that he would kill the victim. Six months after the murder, she heard Chase admit that he committed the murder, stating that he made good on his previous threat to beat the victim's brains in with a bat. An inmate incarcerated with Chase was prepared to testify that Chase told him that he, and not defendant, committed the murder. Another inmate who overheard that conversation was also willing to testify. A woman who was apparently living with Chase would testify that a few nights prior to the murder she went to the victim's house to get away from Chase. When Chase appeared at the victim's house, the victim refused to let Chase in and threatened Chase with a baseball bat, prompting Chase's response that the victim would be sorry he got involved and that he was going to get hurt. This occurrence was corroborated by an independent witness, a local cabdriver, who testified that he picked up a man fitting Chase's description at the home where Chase was apparently living, drove him to the victim's house and waited outside, where the cabdriver heard yelling between his fare and an occupant of the house. The fare yelled that the victim needed to pay the money he owed or he was going to "get beat." Chase testified outside the jury's presence and, predictably, denied committing the murder or making the inculpatory statements attributed to him. County Court struck the cabdriver's testimony and refused to allow the defense to admit any of this evidence of third-party culpability. The court reached this determination based, at least in part, on the People's arguments that Chase attended a meeting with his parole officer in Brooklyn at 3:00 P.M. on the day prior to the murder, Chase's statements were allegedly inadmissible hearsay and Chase's DNA was not on the bat. In *Holmes v South Carolina* (547 US at 323), under similar circumstances, the United States Supreme Court reversed a conviction based upon the trial court's improper exclusion of evidence concerning third-party culpability, thereby violating the defendant's right to " 'a meaningful opportunity to present a complete defense' " (*Crane v Kentucky*, 476 US 683, 690 [1986], quoting *California v Trombetta*, 467 US 479, 485 [1984]; *accord Holmes v South Carolina*, 547 US at 331).

In the present case, County Court followed the proper procedure by permitting the defense to make a proffer outside the presence of the jury and allowing the People to argue in opposition. The court abused its discretion, however, in denying defendant the opportunity to present his evidence which was not merely speculative, but specific and adequately connected Chase to the victim and scene so that it " 'tend[ed] clearly to point out someone besides [defendant] as the guilty party' " (*People v Schulz*, 4 NY3d at 529, quoting *Greenfield v People*, 85 NY 75, 89 [1881]; *see People v Primo*, 96 NY2d at 356-357; *compare People v Schulz*, 4 NY3d at 529; *People v Thomas*, 40 AD3d 232, 232 [2007], *lv denied* 9 NY3d 869 [2007]; *People v Mane*, 36 AD3d 1079, 1080-1081 [2007], *lv denied* 8 NY3d 987 [2007]). By evaluating and relying upon the strength of the People's potential rebuttal evidence and Chase's denial, the court usurped the jury's role of assessing credibility and the relative strength of conflicting evidence, depriving defendant of his right to present a complete defense (*see Holmes v South Carolina*, 547 US at 330-331). The evidence proffered by defendant was relevant, specific, adequately linked Chase to the crime, and would not have resulted in unreasonable delay, prejudice to the prosecution, or confusion of the jury.

Chase's statements inculpating himself were hearsay, however, rendering them inadmissible unless some exception exists or the application of the hearsay rule violates defendant's fundamental right to a fair trial. The elements of the exception for declarations against penal interest were not met here because Chase was available to give testimony and actually testified, albeit outside the jury's presence (*see People v Thomas*, 68 NY2d 194, 197 [1986], *cert denied* 480 US 948 [1987], *overruled on other grounds People v Hardy*, 4 NY3d 192 [2005]). Thus, a strict application of the hearsay rule would prevent admission of Chase's statements. The United States Supreme Court has held that even where an evidentiary ruling was correct under the state's evidentiary rule, the court should still consider whether that evidentiary rule is " 'arbitrary' or 'disproportionate to the purposes [it is] designed to serve' " such that its application "infringed upon a weighty interest of the accused" (*United States v Scheffer*, 523 US 303, 308 [1998], quoting *Rock v Arkansas*, 483 US 44, 56 [1987]; *see Hawkins v Costello*, 460 F3d 238, 244 [2d Cir 2006], *cert denied sub nom. Hawkins v Perlman*, 549 US 1215 [2007]; *see also Holmes v South Carolina*, 547 US at 331). As applied here, New York's common-law exception to the hearsay rule for declarations against penal interest would permit the admission of Chase's statements only if he asserted his Fifth Amendment right and

refused to testify—making him unavailable—but those statements are deemed inadmissible under this particular exception if he testifies that he never made the statements. Yet the ability to challenge those statements through cross-examination when the witness testifies provides a better opportunity to test or assure their credibility.

Here, supported by the relevant nonhearsay evidence, the hearsay testimony proffered by defendant "bore persuasive assurances of trustworthiness" and was critical to his defense (*Chambers v Mississippi*, 410 US 284, 302 [1973]). "In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice" (*id.*). Indeed, this Court has held that where a "statement is exculpatory as to [a] defendant, a less exacting standard applies" in determining whether statements against penal interest are admissible, and "where the statement forms a critical part of the defense, due process concerns may tip the scales in favor of admission" (*People v Darrisaw*, 206 AD2d 661, 664 [1994]). Given the importance of Chase's statements to the defense, the other evidence supporting those statements, and Chase's availability to testify and test the credibility of those statements, exclusion of those statements infringed on defendant's weighty interest in presenting exculpatory evidence, thus depriving him of a fair trial (*see Chambers v Mississippi*, 410 US at 302-303; *People v Darrisaw*, 206 AD2d at 665; *cf. Hawkins v Costello*, 460 F3d at 245). Because the evidence of third-party culpability was improperly excluded, defendant is entitled to a new trial.

Based upon our reversal, we need only address a few additional issues. While defendant contests the prosecutor's handling of DNA testing on the bat, these alleged shortcomings can be addressed through cross-examination and go to the weight to be accorded the evidence (*see People v Wesley*, 83 NY2d 417, 436 [1994, Kaye, Ch. J., concurring]; *People v Watson*, 167 Misc 2d 418, 426 [1995], *affd* 259 AD2d 380 [1999], *lv denied* 93 NY2d 1029 [1999]). County Court appropriately denied defendant's proposed jury charge on voluntariness of his statements, which was convoluted and beyond the understanding of a lay jury, and instead used a slightly revised version of the CJI charge (*see People v Dickson*, 58 AD3d 1016, 1018 [2009]). We need not address the arguments raised on defendant's CPL 440.10 motion, as our remittal for a retrial renders those issues academic.

Mercure, J.P., Peters, Lahtinen and Malone Jr., JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of St. Lawrence County for a new

trial. Ordered that the appeal from the order is dismissed, as academic.