■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEMETRIUS E. MOLINA, Appellant. [914 NYS2d 331]—

Egan Jr., J. Appeal from a judgment of the County Court of Chemung County (Buckley, J.), rendered July 28, 2009, upon a verdict convicting defendant of the crimes of manslaughter in

the first degree, murder in the second degree, attempted murder in the second degree, criminal use of a firearm in the first degree (two counts) and criminal possession of a weapon in the second degree.

On August 1, 2008, Maurice Davis was sleeping in the master bedroom on the second floor of the apartment he shared with his wife at 347 Woodlawn Avenue in an apartment complex located in the City of Elmira, Chemung County, when a bullet penetrated the apartment's exterior wall, striking him in the head and killing him. Defendant was thereafter arrested and charged with two counts of murder in the second degree, attempted murder in the second degree, two counts of criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree. Following a jury trial, defendant was convicted of manslaughter in the first degree (as a lesser included offense of intentional murder in the second degree), depraved indifference murder in the second degree, attempted murder in the second degree, two counts of criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree. Defendant was sentenced to an aggregate prison term of 17½ years to life, with five years of postrelease supervision. Defendant now appeals.

The testimony at trial established that, on the evening of July 31, 2008, Eric Knox, Romondo Ross and defendant were at a nightclub near the City of Elmira, when an altercation occurred between Ross and another group of men from South Carolina. After leaving the nightclub, both groups eventually traveled to the apartment complex, with the men from South Carolina congregating outside of the apartment at 352 Woodlawn Avenue. Knox, Ross and defendant met up with Jarvis Harvard, Bruce Bacome and Aaron Bacome at the complex, circled around the grounds of the complex on foot to the north, then turned to the south heading towards 352 Woodlawn Avenue. Viewed from this perspective, 347 Woodlawn Avenue lay to the south, or beyond, 352 Woodlawn Avenue. As they approached the men from South Carolina who were with certain other people, Harvard heard someone in his group say, "there they go over there." Harvard then saw defendant pull a gun from his waistband and start shooting. Harvard heard "bang, bang, bang, bang" and ran. The doorway of 352 Woodlawn Avenue sustained bullet strike marks, and bullet fragments were found on the ground in front of the door, but none of the persons standing there was struck. Two other bullets, both 9 millimeter, penetrated the exterior walls of 347 Woodlawn Avenue, the apartment building where Davis and his family resided. One bullet penetrated the

exterior wall of the second floor children's bedroom, passed through an interior sheet rock wall and fell to the floor; the other bullet penetrated the exterior wall of the second floor master bedroom, passed through the bed's headboard and struck the victim. Four 9 millimeter shell casings, all opined to have been discharged from the same firearm, were found on the ground near the northeast corner of 352 Woodlawn Avenue. A trajectory analysis of the bullet holes at 347 Woodlawn Avenue revealed that they were consistent with having been fired from the area where the ejected casings were found.

Defendant contends that County Court erred by instructing the jury that it could consider the charges of intentional murder in the second degree and depraved indifference murder in the second degree in the conjunctive, rather than in the alternative. Intentional murder in the second degree requires a finding that, with the "intent to cause the death of another person, [the defendant] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). Depraved indifference murder in the second degree requires a finding that, "[u]nder circumstances evincing a depraved indifference to human life, [the defendant] recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person" (Penal Law § 125.25 [2]).

Generally, a defendant cannot be found to have both intended the death of a victim and, at the same time, "committed depraved mind murder by recklessly and thus unintentionally killing that same victim" (*People v Gallagher*, 69 NY2d 525, 529-530 [1987]; *see Matter of Suarez v Byrne*, 10 NY3d 523, 534 [2008]; *People v Gonzalez*, 1 NY3d 464, 468 [2004]). " '[T]win-count' indictments—charging both intentional homicide and depraved indifference murder—should be rare. Twin-count submissions to a jury, even rarer" (*People v Suarez*, 6 NY3d 202, 215 [2005]). When both counts are presented, "trial courts should presume that the defendant's conduct falls within only one category of murder and, unless compelling evidence is presented to the contrary, dismiss the count that is least appropriate to the facts" (*id.* at 215 [internal quotation marks and citation omitted]). While a defendant may possess "different states of mind with regard to different potential victims" (*People v Page*, 63 AD3d 506, 508 [2009], *lv denied* 13 NY3d 837 [2009]) and "can intend to cause the death of one person while simultaneously engaging in conduct that recklessly creates a grave risk of death to another" (*People v Craft*, 36 AD3d 1145, 1147 [2007], *lv denied* 8 NY3d 945 [2007]), the fiction of "transferred intent"—permitting prosecution under Penal Law

§ 125.25 (1) for causing the death of an unintended victim—"should not be employed to multiply criminal liability, but to prevent a defendant who has committed all of the elements of a crime (albeit not upon the same victim) from escaping responsibility for that crime" (*People v Fernandez*, 88 NY2d 777, 782 [1996] [internal quotation marks and citation omitted]). Thus, in the rare circumstance that the counts of intentional murder and depraved indifference murder are submitted to the jury (*see People v Suarez*, 6 NY3d at 215; *People v Timmons*, 78 AD3d 1241, 1243 [2010]; *People v Rollins*, 51 AD3d 1279, 1281 [2008], *lv denied* 11 NY3d 922 [2009]), we find that each count and its appropriate lesser included offenses must be charged in the alternative (*see* CPL 300.30 [5]; 300.40 [5]; *People v Gallagher*, 69 NY2d at 530; *People v Timmons*, 78 AD3d at 1243; *cf. People v Henderson*, 78 AD3d 1506, 1507 [2010]; *but cf. People v Page*, 63 AD3d at 508; *People v Monserate*, 256 AD2d 15, 15-16 [1998], *lv denied* 93 NY2d 855 [1999]).

Where as here, defendant intended to kill one or more of the men from South Carolina but mistakenly killed Davis, he may be found guilty of the intentional murder of Davis under the doctrine of "transferred intent" (*People v Timmons*, 78 AD3d at 1243; *see People v Fernandez*, 88 NY2d at 781), or he may be found guilty of depraved indifference murder by his act of shooting a gun in an occupied apartment complex, the bullets of which penetrate the wall of a neighboring apartment building causing the fatality (*see People v Timmons*, 78 AD3d at 1243), but not both. To hold otherwise impermissibly takes the issue of determining defendant's mens rea out of the hands of the jury (*see People v Gallagher*, 69 NY2d at 530), and invites the jury to simultaneously convict defendant of killing Davis both intentionally and with a depraved mind, when it should have been instructed that it could find defendant guilty of *either* intentional murder *or* depraved indifference murder, or some lesser count of either one. Accordingly, County Court erred in permitting the jury to consider the intentional murder count in the conjunctive with the depraved indifference murder count. As such, defendant's convictions of manslaughter in the first degree and murder in the second degree under counts one and two of the indictment must be reversed.

Defendant next argues that the verdict was against the weight of the evidence since Harvard's testimony was not sufficiently credible to establish defendant's guilt and since the shell casings found at the scene were not in the location that Harvard placed defendant at the time of the shooting. A weight of the evidence review is "a two-step approach that requires courts to

first determine whether, based on all the credible evidence, a different finding would not have been unreasonable, and, if that step is satisfied, then the appellate court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Sanchez*, 75 AD3d 911, 913 [2010] [internal quotation marks and citations omitted]; *see People v Battease*, 74 AD3d 1571, 1575 [2010], *lv denied* 15 NY3d 849 [2010]). In light of our determination thus far, we need not address the weight of the evidence as it pertains to depraved indifference murder in the second degree and manslaughter in the first degree.

With respect to the charge of attempted murder in the second degree, the People were obligated to prove that, with the intent to cause the death of another person, defendant engaged in conduct which tended to effect commission of that crime (*see* Penal Law §§ 110.00, 125.25 [1]). "Where those elements converge, an attempted murder has occurred, regardless of whether the defendant has killed or even injured his or her intended target" (*People v Fernandez*, 88 NY2d at 783). With respect to the charge of criminal use of a firearm in the first degree, the People were obligated to prove that defendant committed a "class B violent felony offense" (Penal Law § 265.09 [1]) and either possessed a loaded weapon (*see* Penal Law § 265.09 [1] [a]) or "display[ed] what appear[ed] to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 265.09 [1] [b]). Finally, with respect to the charge of criminal possession of a weapon in the second degree, the People were obligated to prove that defendant possessed a loaded firearm with the intent to use it unlawfully against another (*see* Penal Law § 265.03 [1] [b]).

Here, an eyewitness—Harvard—placed a gun in defendant's hand firing shots at the direction of the men from South Carolina as Harvard's group approached 352 Woodlawn Avenue. While defendant questions the credibility of Harvard—who initially lied to police about his presence at the crime scene, then stated that he was too intoxicated to know what transpired and further admitted telling people "on the street" that he did not see defendant with a gun—defendant's own witness, Bruce Bacome, also admitted lying to police about his whereabouts at the time of the shooting. To the extent that defendant and Bacome testified that defendant was merely a passive bystander when the shots were fired and did not have a gun on the night of the shooting, this testimony, insofar as it conflicted with Harvard's, "presented a classic credibility issue, and the jury

obviously credited [Harvard's] account, which was not contradicted by any compelling evidence offered by defendant and was not so unworthy of belief as to be incredible as a matter of law" (*People v Allen*, 13 AD3d 892, 894 [2004], *lv denied* 4 NY3d 883 [2005] [internal quotation marks and citations omitted]). Likewise, we are unpersuaded that Harvard's testimony at trial, placing himself and defendant in the general vicinity where the shell casings were found but slightly northeasterly from where the People's ballistic expert opined the shooter would have stood, renders the verdict against the weight of the evidence. Reviewing this evidence in a neutral light (*see People v Rolle*, 72 AD3d 1393, 1396 [2010]), according "[g]reat deference . . . to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Race*, 78 AD3d 1217, 1219 [2010] [internal quotation marks and citation omitted]), and noting that defendant's intent may be inferred from his actions and the surrounding circumstances (*see People v Malcolm*, 74 AD3d 1483, 1484 [2010]; *People v Bonney*, 69 AD3d 1116, 1118 [2010], *lv denied* 14 NY3d 838 [2010]), we find that the verdict convicting defendant of attempted murder in the second degree, criminal use of a firearm in the first degree (two counts) and criminal possession of a weapon in the second degree is not against the weight of the evidence.

Next, we are unpersuaded that County Court erred in excluding evidence of third-party culpability. "Before permitting evidence that another individual committed the crime for which a defendant is on trial, the court is required to determine if the evidence is relevant and probative of a fact at issue in the case, and further that it is not based upon suspicion or surmise" (*People v Oxley*, 64 AD3d 1078, 1081 [2009], *lv denied* 13 NY3d 941 [2010]; *see People v Primo*, 96 NY2d 351, 357 [2001]). In an application to call Courtney Cade as a witness, defendant's counsel made an offer of proof that Cade would testify that a man named "Hick" told him that he had a weapon that was used in this incident, and that that weapon had a "a body on it." While this testimony is relevant as tending to "point out someone besides the [defendant] as the guilty party" (*People v Schulz*, 4 NY3d 521, 529 [2005] [internal quotation marks and citation omitted]), Cade's testimony as to Hick's statements would constitute hearsay, and no exception under *People v Oxley* (64 AD3d at 1081) exists to permit their admissibility. Unlike in *Oxley*, Hick was not available to testify and be subjected to cross-examination, and there was no other evidence tending to support his hearsay statements.

Next, we are not persuaded that the People's use of the term

"red herring" during summation to describe defendant's criticism of the police investigation and the speculative suggestion that Frederick Glen—a person who allegedly committed an unrelated robbery shortly before the murder—was the true shooter "exceed[ed] the broad bounds of rhetorical comment permissible in closing argument" (*People v Galloway*, 54 NY2d 396, 399 [1981]; *see People v Fairley*, 63 AD3d 1288, 1289 [2009], *lv denied* 13 NY3d 743 [2009]; *People v Rivera*, 159 AD2d 255, 256 [1990], *lv denied* 76 NY2d 795 [1990]). Likewise, we find that the People's reference during summation to comments made during jury section asking potential jurors "if [they] had courage to stand by at the end of this case, if [they] were convinced beyond a reasonable doubt, if [they] had the courage to find [defendant] guilty" did not substantially prejudice defendant's trial when viewed " 'in the context of the entire summation and, even more, the entire trial' " (*People v Lockhart*, 12 AD3d 842, 845 [2004], *lv denied* 4 NY3d 800 [2005], quoting *People v Galloway*, 54 NY2d at 401). Defendant's remaining objections to the People's summation, including that the prosecution impermissibly vouched for Harvard's credibility and also improperly shifted the burden of proof by questioning the defense theory of the case, have no merit as the People's comments constituted a fair response to defense counsel's summation (*People v Valderama*, 25 AD3d 819, 821 [2006], *lv denied* 6 NY3d 854 [2006]). We also note that the prosecutor's comment asking "[how] would you like it if somebody walked up and down your street firing at your house" was immediately withdrawn and, in any event, was "not pervasive so as to deprive defendant of a fair trial" (*People v Lazzaro*, 62 AD3d 1035, 1036 [2009]; *see People v Hopkins*, 56 AD3d 820, 821 [2008]; *People v Grady*, 40 AD3d 1368, 1375 [2007], *lv denied* 9 NY3d 923 [2007]).

In light of our determination, we need not address defendant's argument that the evidence was legally insufficient to sustain the conviction of depraved indifference murder in the second degree. Finally, defendant's argument that the charge of attempted murder in the second degree must also be submitted in the alternative to the depraved indifference murder charge has not been preserved for appellate review, and we decline to exercise our interest of justice jurisdiction (*see* CPL 470.15 [6] [a]).

Mercure, J.P., Malone Jr., Kavanagh and Garry, JJ., concur. Ordered that the judgment is modified, on the law, by reversing defendant's convictions of manslaughter in the first degree and murder in the second degree under counts one and two of the

indictment; matter remitted to the County Court of Chemung County (1) for a new trial on count two and (2) without prejudice to the People to re-present the charge of manslaughter in the first degree to a grand jury; and, as so modified, affirmed.