*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 18, 2015                    105211
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,
          v                                  MEMORANDUM AND ORDER

CHAUNCEY WINCHELL, Also Known
    as CHAMP WINCHELL,
                        Appellant.
_____

Calendar Date:  April 27, 2015

Before:  McCarthy, J.P., Lynch, Devine and Clark, JJ.

_____

        John A. Cirando, Syracuse, for appellant.

        William G. Gabor, District Attorney, Wampsville (Robert A. Mascari of counsel), for respondent.

_____

Devine, J.

        Appeals (1) from a judgment of the County Court of Madison County (McDermott, J.), rendered April 4, 2012, upon a verdict convicting defendant of the crimes of murder in the first degree, robbery in the first degree (two counts), robbery in the second degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree (two counts), unauthorized use of a motor vehicle in the first degree, criminal possession of a weapon in the third degree and criminal possession of stolen property in the fourth degree, and (2) from a judgment of said court, rendered June 28, 2012, which resentenced defendant.

Defendant and Mark Murray (hereinafter the victim) were acquainted with one another and were both involved in the drug trade in central New York. The victim received over $85,000 in the settlement of a personal injury action in December 2007 and, by May 2008, he owned a red Pontiac Firebird and carried approximately $10,000 in cash on his person. According to several individuals, defendant was interested in robbing a drug dealer and indicated that he would do whatever was necessary in order to ensure the success of that robbery. Defendant had specifically targeted the victim by January 2008 and had made statements that he intended to kill the victim and take the victim's car. Defendant called the victim several times on May 22, 2008, and their cell phone records indicated that they traveled together to Madison County. The victim was never seen alive again and, shortly thereafter, defendant traveled to Tennessee in a red Pontiac Firebird.

In April 2010, the victim's skeleton was found in a shallow grave in the City of Oneida, Madison County. An examination of the body indicated that the victim had been shot multiple times in the head. Defendant was thereafter charged in an indictment with numerous offenses stemming from the robbery and death of the victim. Following a jury trial, defendant was found guilty of murder in the first degree, robbery in the first degree (two counts), robbery in the second degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree (two counts), unauthorized use of a motor vehicle in the first degree, criminal possession of a weapon in the third degree and criminal possession of stolen property in the fourth degree. County Court sentenced defendant to a prison term of life without the possibility of parole upon the murder conviction, with the sentences on the remaining convictions running concurrently. After being advised that the required period of postrelease supervision had not been imposed on some of the counts, County Court resentenced defendant to correct that omission. Defendant now appeals from the initial judgment of conviction and the judgment on resentencing.

We affirm. Defendant contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. Although his legal sufficiency argument

is unpreserved due to the absence of a renewed motion to dismiss at the close of proof, we necessarily evaluate whether all elements of the charged crimes were proven beyond a reasonable doubt under our weight of the evidence review (see People v Pine, 126 AD3d 1112, 1114 [2015]; People v Robinson, 123 AD3d 1224, 1225 [2014], lvs denied 25 NY3d 992, 993 [2015]). As noted above, the victim carried large amounts of cash on his person, several individuals indicated that defendant had targeted him for robbery, and cell phone records indicated that defendant and the victim were traveling together on May 22, 2008. The victim was traveling in his red Pontiac Firebird on that day, and the last activity on his cell phone occurred at 3:36 p.m. in the area where his body would later be recovered. Defendant then appeared at the adjoining residences of his brother and sister around 4:30 p.m. that afternoon, which his sister testified was about a 15-minute drive from the area where the victim was buried. At that point, defendant was driving a red Pontiac Firebird and was behaving in a nervous manner. Defendant told his brother that he had just been paid $10,000 for an unspecified job, and he was observed with a gun. He further asked for a change of pants, apparently burned the ones that he had been wearing, and disposed of items that he had placed in a plastic bag during a walk in the woods. Defendant traveled to Tennessee shortly thereafter, where he disposed of clothing that was stored in the Pontiac Firebird and expressed his displeasure that he had to identify himself to sell the vehicle. Moreover, a convict who was being transported with defendant shortly after the victim's body was discovered testified that defendant had bragged of how he had gotten rid of evidence that could tie him to the killing. Defendant vigorously attacked the credibility of the People's witnesses and insinuated that others may have been motivated to kill the victim. Even assuming that a different verdict would not have been unreasonable, however, "viewing the evidence in a neutral light and giving deference to the jury's credibility determinations leads us to conclude that defendant's conviction[s] [were] not against the weight of the evidence" (People v Rizvi, 126 AD3d 1172, 1175 [2015]; see People v Augustine, 89 AD3d 1238, 1241-1242 [2011], affd 21 NY3d 949 [2013]; People v Doyle, 48 AD3d 961, 962-963 [2008], lv denied 10 NY3d 862 [2008]).

Turning to defendant's complaints regarding the jury selection process, County Court indicated that the parties would have "about [15] or [20] minutes" for voir dire questioning, and allowed defense counsel to question prospective jurors for 25 minutes.  Defense counsel nevertheless indicated that he felt "a little bit constrained" by the limit, prompting County Court to allow 30 minutes for subsequent voir dire.  In our view, these limitations constituted a proper exercise of County Court's "broad discretion to restrict the scope of voir dire by counsel" (People v Jean, 75 NY2d 744, 745 [1989]; see CPL 270.15 [1] [c]; People v Jackson, 244 AD2d 757, 758 [1997], lv denied 91 NY2d 926 [1998]).  County Court also did not abuse its discretion in requiring that armed officers escort defendant to voir dire conferences that he elected to attend.  Defendant was not restrained and wore civilian clothing during the trial and, given the accusations of violent conduct against him, "the proximity to a civilian prospective juror at the [conferences] warranted caution and an appropriate security measure" (People v Vargas, 88 NY2d 363, 377 [1996]; see People v Gamble, 18 NY3d 386, 396-397 [2012]).  Defendant, in any case, did not object to the procedure until after jury selection, and County Court ameliorated any prejudice by instructing the jury that the presence of the officers was typical and that no adverse inference should be drawn against defendant because of it.

Defendant also asserts that County Court erred in excluding testimony regarding the possibility that a third party had robbed and killed the victim.  "Before permitting evidence that another individual committed the crime for which a defendant is on trial, the court is required to determine if the evidence is relevant and probative of a fact at issue in the case, and further that it is not based upon suspicion or surmise" (People v Oxley, 64 AD3d 1078, 1081 [2009], lv denied 13 NY3d 941 [2010]; accord People v Molina, 79 AD3d 1371, 1376 [2010], lv denied 16 NY3d 861 [2011]; see People v Primo, 96 NY2d 351, 356-357 [2001]).  County Court employed that procedure here and, in his offer of proof, defendant indicated that two of the proposed witnesses would testify that the third party had expressed an interest in robbing the victim "at some point."  The remaining witness would testify that the third party "talk[ed] regularly about" the victim after his disappearance and claimed (incorrectly) that someone had

thrown his corpse into a body of water after a drug robbery. Inasmuch as rank speculation would be required to infer the third party's involvement in the crimes at issue from this hearsay evidence, County Court properly balanced the minimal probative value of that evidence against the strong potential for prejudice and declined to admit it (see People v Gamble, 18 NY3d at 398-399; People v Schulz, 4 NY3d 521, 529 [2005]; People v Primo, 96 NY2d at 356-357; compare People v Oxley, 64 AD3d at 1082-1083).

Defendant's remaining arguments may be briefly disposed of. County Court properly rejected his efforts to introduce expert testimony regarding the dubious credibility of police informants. A typical juror is capable of discerning why an informant might lie in order to curry favor with law enforcement officials, and expert testimony on that issue would constitute "a serious usurpation of the jury's prerogative and responsibility" to assess credibility (People v Parks, 41 NY2d 36, 48 [1976]; see People v Williams, 6 NY2d 18, 26-27 [1959], cert denied 361 US 920 [1959]; see also People v Williams, 20 NY3d 579, 583-584 [2013]). Defendant's further claim that he was deprived of a fair trial due to prosecutorial misconduct during the People's opening statement and summation is largely unpreserved and, regardless, the complained-of comments were "not so substantially prejudicial as to deprive defendant of a fair trial, particularly in light of the strength of the People's case and the overwhelming proof of defendant's guilt" (People v Head, 90 AD3d 1157, 1158 [2011]; see People v Turcotte, 124 AD3d 1082, 1084 [2015]). Moreover, "[c]onsidering the brutal nature of the crime, together with defendant's criminal record and apparent lack of remorse, we find neither an abuse of discretion nor extraordinary circumstances warranting a reduction of the sentence" (People v Mattis, 108 AD3d 872, 876 [2013], lvs denied 22 NY3d 957 [2013]; see People v Shoemaker, 119 AD3d 1073, 1077 [2014], lv denied 25 NY3d 992 [2015]).

We have examined defendant's remaining contentions and find them to be unpersuasive.

McCarthy, J.P., Lynch and Clark, JJ., concur.

ORDERED that the judgments are affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court