■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ADAM BRADLEY, Appellant. [952 NYS2d 260]—

The defendant was alleged to have, among other things, thrown a cup of hot tea on his wife and slammed a bedroom door on her hand during two separate incidents which occurred inside their home and outside the presence of any other witnesses. At the trial, the defendant's wife testified for the People, and her description of these incidents demonstrated that the defendant had committed the alleged acts intentionally. On cross-examination, the defendant's wife specifically denied ever telling anyone that she thought the bedroom door was shut on her hand accidentally. The Supreme Court later precluded defense counsel from asking one of the detectives who investigated the allegations whether the defendant's wife ever told him that the bedroom door was shut on her hand accidentally.

The defendant testified on his own behalf. The defendant did not dispute that these events took place, but his testimony demonstrated that the tea had been spilled inadvertently on both him and his wife and that his wife's hand was accidentally caught in the bedroom door while he and his wife pushed it back and forth during an argument. During the defendant's case, the Supreme Court precluded the testimony of two witnesses, which was offered to show that the defendant's wife had, on a number of occasions shortly after the bedroom door incident, stated that she thought that the door had been shut on her hand accidentally. The court based these evidentiary rulings on the conclusion that the proffered testimony would constitute hearsay that was "too remote or speculative" to be relevant.

The defendant was convicted of attempted assault in the third degree, harassment in the second degree (three counts), and criminal contempt in the second degree. On appeal, the defendant contends, inter alia, that the verdict was against the weight of the evidence and that the Supreme Court's evidentiary rulings deprived him of his right to present a defense.

In fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great

deference to the opportunity of the trier of fact to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

However, given the circumstances of this case, we conclude that the defendant was deprived of a fair trial. The right to present a defense constitutes "a fundamental element of due process of law" (*Washington v Texas*, 388 US 14, 19 [1967]), and it is one of the "minimum essentials of a fair trial" (*Chambers v Mississippi*, 410 US 284, 294 [1973]; *see People v Gibian*, 76 AD3d 583, 585 [2010]). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the [trier of fact] so it may decide where the truth lies" (*Washington v Texas*, 388 US at 19; *see People v Taylor*, 40 AD3d 782, 784 [2007]).

"Once a proper foundation is laid, a party may show that an adversary's witness has, on another occasion, made oral or written statements which are inconsistent with some material part of the trial testimony, for the purpose of impeaching the credibility and thereby discrediting the testimony of the witness" (Jerome Prince, Richardson on Evidence § 6-411 [Farrell 11th ed], citing *People v Duncan*, 46 NY2d 74, 80 [1978], *cert denied* 442 US 910 [1979]). "To lay the foundation for contradiction, it is necessary to ask the witness specifically whether he has made such statements; and the usual and most accurate mode of examining the contradicting witness, is to ask the precise question put to the principal witness" (*Sloan v New York Cent. R.R. Co.*, 45 NY 125, 127 [1871]). "But the practice upon this subject must be, to some extent, under the control and discretion of the court" (*id.* at 127; *see Hanselman v Broad*, 113 App Div 447, 450 [1906]), "provided the testimony of the impeaching witness is a substantial contradiction of the testimony of the principal witness with respect to that statement" (Jerome Prince, Richardson on Evidence § 6-411 [*a*] [Farrell 11th ed]; *see* CJI2d [NY] Credibility of Witnesses—Inconsistent Statements ). Where a proper foundation has not been laid, evidence of a purportedly inconsistent statement is not relevant to the issue of the principal witness' credibility (*see People v Duncan*, 46 NY2d 74, 81 [1978]; *see also* Jerome Prince, Richardson on Evidence § 4-101 [Farrell 11th ed]).

Since evidence of inconsistent statements "is often collateral to the ultimate issue before the [trier of fact] and bears only upon the credibility of the witness, its admissibility is entrusted to the sound discretion of the Trial Judge" (*People v Duncan*, 46 NY2d at 80). Indeed, "[i]t is well established that the trial courts have broad discretion to keep the proceedings within manageable limits and to curtail exploration of collateral matters" (*People v Hudy*, 73 NY2d 40, 56 [1988]). However, "the trial court's discretion in this area is circumscribed by the defendant's constitutional rights to present a defense and confront his accusers" (*id.* at 57, citing *Davis v Alaska*, 415 US 308 [1974]; *see Chambers v Mississippi*, 410 US 284 [1973]; *Washington v Texas*, 388 US 14 [1967]; *Pointer v Texas*, 380 US 400 [1965]; *People v Gissendanner*, 48 NY2d 543, 546 [1979]). Thus, while a trial court may preclude impeachment evidence that is speculative, remote, or collateral, "[that] rule . . . has no application where the issue to which the evidence relates is material in the sense that it is relevant to the very issues that the [trier of fact] must decide" (*People v Knight*, 80 NY2d 845, 847 [1992]). In other words, there is no risk of diversionary excursions into collateral matters where "[t]he substance of th[e] contradiction goes to a material, core issue in the case" (*People v Cade*, 73 NY2d 904, 905 [1989]; *see People v Wise*, 46 NY2d 321, 327-328 [1978]).

Where the truth of the matter asserted in the proffered inconsistent statement is relevant to a core factual issue of a case, its relevancy is not restricted to the issue of credibility and its probative value is not dependent on the inconsistent statement. Under such circumstances, the right to present a defense may "encompass[ ] the right to place before the [trier of fact] secondary forms of evidence, such as hearsay" (*People v Gibian*, 76 AD3d 583, 585 [2010], citing *Chambers v Mississippi*, 410 US at 294; *see People v Esteves*, 152 AD2d 406, 413-414 [1989]). Indeed "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice" (*Chambers v Mississippi*, 410 US at 302; *see People v Robinson*, 89 NY2d 648, 650 [1997]; *People v Abdul*, 76 AD3d 563, 565 [2010]; *People v Oxley*, 64 AD3d 1078, 1083-1084 [2009]).

Applying these principles here, we conclude that the Supreme Court improperly precluded the defendant from adducing testimony which showed that his wife told others that the bedroom door was accidentally closed on her hand. The proffered testimony was in "substantial contradiction" to the wife's testimony that the defendant intentionally slammed the door

on her hand and that she never told anyone that her hand had been caught in the bedroom door accidentally, and it was, therefore, sufficiently inconsistent to be relevant to the issue of the wife's credibility (Jerome Prince, Richardson on Evidence § 6-411 [Farrell 11th ed]; see CJI2d [NY] Credibility of Witnesses—Inconsistent Statements). Furthermore, testimony as to whether the defendant's wife told others that the bedroom door was accidentally closed on her hand was not related to a collateral matter at all, but rather, it went directly to the heart of the most contested aspect of this case—the defendant's intent. As such, the precluded evidence was not only relevant to the wife's credibility, it was also "relevant to the very issues that the [trier of fact] must decide" (People v Knight, 80 NY2d 845, 847 [1992]; see People v Jaikaran, 95 AD3d 903 [2012]; People v Gomez, 79 AD3d 1065, 1067 [2010]; People v Perez, 40 AD3d 1131, 1132 [2007]; People v Ocampo, 28 AD3d 684, 686 [2006]; People v Gibbs, 215 AD2d 689, 689-690 [1995]). Under the circumstances present here, the preclusion of such material and exculpatory evidence deprived the defendant of a fair trial (see Chambers v Mississippi, 410 US at 302; People v Robinson, 89 NY2d at 650; People v Abdul, 76 AD3d at 565; People v Oxley, 64 AD3d at 1083-1084; cf. People v Fields, 89 AD3d 861, 862 [2011]). Accordingly, the judgments must be reversed and the matters remitted to the Supreme Court, Westchester County, for a new trial.

In light of our determination, we need not reach the defendant's remaining contentions. Belen, Hall and Miller, JJ., concur.

Balkin, J.P., dissents, and votes to affirm the judgments with the following memorandum: I agree with my colleagues' conclusion that the verdict was not against the weight of the evidence. My colleagues also conclude, however, that various evidentiary rulings require reversal of the judgments and a new trial. They propound two rationales for this holding, and I disagree with both. Accordingly, I respectfully dissent.

As my colleagues point out, "[o]nce a proper foundation is laid, a party may show that an adversary's witness has, on another occasion, made oral or written statements which are inconsistent with some material part of the trial testimony, for the purpose of impeaching the credibility and thereby discrediting the testimony of the witness" (Jerome Prince, Richardson on Evidence § 6-411 at 405 [Farrell 11th ed], citing People v Duncan, 46 NY2d 74, 80 [1978], cert denied 442 US 910 [1979]; see Michael M. Martin, Daniel J. Capra & Faust F. Rossi, New York Evidence Handbook § 6.8.3 at 485-486 [2d ed]; Robert A. Barker & Vincent C. Alexander, Evidence in New York State

and Federal Courts § 6:52 at 567-571 [2d ed 5 West's NY Prac Series 2011]). And, as my colleagues assert, the trial court precluded extrinsic evidence of purported inconsistent statements relating to material issues in the case, and not merely to collateral matters relevant only to general credibility (*cf. People v Pavao*, 59 NY2d 282, 288-289 [1983]; *People v Fiedorczyk*, 159 AD2d 585, 586-587 [1990]). Consequently, I agree that if the defendant had laid the proper foundation, then it would have been error for the court to preclude him from presenting the proffered extrinsic evidence of the prior inconsistent statements as impeachment evidence. I disagree with my colleagues' conclusion that the defendant laid a proper foundation.

The foundation necessary for impeachment of a witness by prior inconsistent statements on a material issue is straightforward and long settled. The impeaching party must first ask the witness if he or she made the prior statement. A general question about prior statements is not sufficient; the witness's attention must be directed to the time and place of the prior statement, the person to whom it was made and the substance of it (*see People v Duncan*, 46 NY2d at 80-81; *People v Laurey*, 24 AD3d 1107, 1109 [2005]; *People v Sutton*, 209 AD2d 456, 457 [1994]; *People v Longo*, 151 AD2d 786, 786 [1989]; Jerome Prince, Richardson on Evidence § 6-411 [a] at 405 [Farrell 11th ed]; Michael M. Martin, Daniel J. Capra & Faust F. Rossi, New York Evidence Handbook § 6.8.3 at 485-486 [2d ed]; Robert A. Barker & Vincent C. Alexander, Evidence in New York State and Federal Courts § 6:52 at 568-569 [2d ed 5 West's Prac Series 2011]). If the witness denies, or claims not to remember, having made the prior statement, the impeaching party may then present extrinsic evidence of it (*see People v Duncan*, 46 NY2d at 81; Jerome Prince, Richardson on Evidence § 6-411 [a] at 405 [Farrell 11th ed]; Michael M. Martin, Daniel J. Capra & Faust F. Rossi, New York Evidence Handbook § 6.8.3 at 486-487 [2d ed]).

In this case, the defendant's claim pertains to prior statements the complainant allegedly had made to three people, two civilians and a detective. On cross-examination, defense counsel asked the complainant whether she had ever told "anyone" that the incident on February 28th was an accident or whether she was not sure how it happened or was confused about what had happened. Defense counsel failed to specify the dates the complainant was alleged to have made these prior statements or to whom they were made. Thus, the foundation for extrinsic evidence of the alleged prior inconsistent statements was inadequate (*see People v Weldon*, 111 NY 569, 575 [1888]; *People v Laurey*, 24 AD3d at 1109; *People v Carter*, 227 AD2d 661, 662-

663 [1996]). Therefore, contrary to the holding of my colleagues, the trial court did not err in precluding the defendant from eliciting, as impeachment evidence, testimony from the two civilians and the detective about the complainant's alleged prior inconsistent statements (*see People v Vukel*, 263 AD2d 416, 417 [1999]; *People v Carter*, 227 AD2d at 662).

My colleagues hold that the evidence was admissible not only as impeachment of the complainant, but also as affirmative evidence that the defendant did not act intentionally. In other words, although the proffered evidence was admittedly hearsay, my colleagues hold that the defendant's right to present a defense overrode the rules of evidence. I disagree. It is true that in some circumstances the right to present a defense will override the hearsay rule (*see Chambers v Mississippi*, 410 US 284, 302 [1973]). But, those circumstances are rare, as examination of the cases cited by the majority makes clear; most of the reversals concerned erroneous exclusion of reliable hearsay evidence that another person had admitted committing the crime for which the defendant was on trial (*see id.*; *People v Abdul*, 76 AD3d 563 [2010]; *People v Oxley*, 64 AD3d 1078 [2009]; *but see People v Fields*, 89 AD3d 861 [2011]; *People v Esteves*, 152 AD2d 406 [1989]; *People v Robinson*, 89 NY2d 648 [1997]). None involved the situation presented here, that of a complaining witness who allegedly made prior statements inconsistent with material parts of her trial testimony. In this common situation, settled rules allow defendants to present extrinsic impeachment evidence after laying a proper foundation. But that extrinsic evidence is admissible so that the jury can properly evaluate the impeached witness's trial testimony; it is "not proof of what happened" (CJI2d [NY] Credibility of Witnesses—Inconsistent Statements). Fundamental as it is, the right to present a defense " ' "does not give criminal defendants carte blanche to circumvent the rules of evidence" ' " (*People v Hayes*, 17 NY3d 46, 53 [2011], *cert denied* 565 US —, 132 S Ct 844 [2011], quoting *People v Cepeda*, 208 AD2d 364, 364 [1994], quoting *United States v Almonte*, 956 F2d 27, 30 [2d Cir 1992]; *see People v Hamilton*, 24 AD3d 241, 242 [2005]; *cf. People v Berk*, 88 NY2d 257, 265-266 [1996], *cert denied* 519 US 859 [1996];. *Ronson v Commissioner of Correction of State of New York*, 604 F2d 176, 178 [1979]).

Finally, because the defendant's remaining challenges to the trial court's evidentiary rulings are similarly without merit, as is his challenge to the court's conduct of sidebar conferences, they likewise afford no basis for reversal.