People v Butts (2020 NY Slip Op 03243)





People v Butts


2020 NY Slip Op 03243


Decided on June 10, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 10, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

SHERI S. ROMAN, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
LINDA CHRISTOPHER, JJ.


2016-01617
 (Ind. No. 370/14)

[*1]The People of the State of New York, respondent,
v
Jermaine Butts, appellant.


Paul Skip Laisure, New York, NY (Yvonne Shivers of counsel), for appellant, and appellant pro se.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Camille O'Hara Gillespie of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Deborah Dowling, J.), rendered January 26, 2016, convicting him of murder in the second degree, burglary in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Kings County, for a new trial.
On November 8, 2013, at approximately 6 p.m., William Jordan, Walter Lindsay, and several others were in Jordan's apartment in the Gowanus area of Brooklyn. Four intruders, concealing their faces with scarves and masks, entered the apartment, two of whom displayed guns, and demanded money and marijuana. One of the intruders shot Lindsay in the back. Jordan was fatally shot in the head. After Jordan was shot, the intruders fled. When interviewed by the police on the night of the incident, Lindsay claimed that he could not identify the intruders. Eleven days later, Lindsay admitted to the police that he recognized three of the intruders as being the defendant and his two codefendants, and that he had not come forward with this information earlier because doing so would cause problems for his family and he feared for their safety. Following a jury trial, the defendant was found guilty of murder in the second degree, burglary in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree. The defendant was sentenced on January 26, 2016, and appeals from the judgment of conviction.
The defendant's contention that his conviction of assault in the second degree was not supported by legally sufficient evidence is unpreserved for appellate review (see People v Hawkins, 11 NY3d 484, 492; People v Easley, 171 AD3d 785). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Danielson, 9 NY3d 342, 349), we find that it was legally sufficient to establish the defendant's guilt of assault in the second degree beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d at 348), we nevertheless accord great deference to the factfinder's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Romero, 7 NY3d 633, 644). Upon reviewing the [*2]record here, we are satisfied that the verdict of guilt as to assault in the second degree was not against the weight of the evidence (see id. at 644).
Under the circumstances of this case, we conclude that the defendant was deprived of a fair trial. The right to present a defense constitutes "a fundamental element of due process of law" (Washington v Texas, 388 US 14, 19), and it is one of the "minimum essentials of a fair trial" (Chambers v Mississippi, 410 US 284, 294; see People v Gibian, 76 AD3d 583, 585). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the [trier of fact] so it may decide where the truth lies" (Washington v Texas, 388 US at 19; see People v Taylor, 40 AD3d 782, 784).
"Once a proper foundation is laid, a party may show that an adversary's witness has, on another occasion, made oral or written statements which are inconsistent with some material part of the trial testimony, for the purpose of impeaching the credibility and thereby discrediting the testimony of the witness" (People v Bradley, 99 AD3d 934, 936 [internal quotation marks omitted]; see People v Duncan, 46 NY2d 74, 80; Jerome Prince, Richardson on Evidence § 6-411 [Farrell 11th ed]). "Since evidence of inconsistent statements is often collateral to the ultimate issue before the [trier of fact] and bears only upon the credibility of the witness, its admissibility is entrusted to the sound discretion of the Trial Judge'" (People v Bradley, 99 AD3d at 937, quoting People v Duncan, 46 NY2d at 80). Indeed, "[i]t is well established that the trial courts have broad discretion to keep the proceedings within manageable limits and to curtail exploration of collateral matters" (People v Hudy, 73 NY2d 40, 56). However, "the trial court's discretion in this area is circumscribed by the defendant's constitutional rights to present a defense and confront his accusers" (id. at 57, citing Davis v Alaska, 415 US 308; see Chambers v Mississippi, 410 US 284; Washington v Texas, 388 US 14; Pointer v Texas, 380 US 400; People v Gissendanner, 48 NY2d 543, 546). "Thus, while a trial court may preclude impeachment evidence that is speculative, remote, or collateral, [that] rule . . . has no application where the issue to which the evidence relates is material in the sense that it is relevant to the very issues that the [trier of fact] must decide'" (People v Bradley, 99 AD3d at 937, quoting People v Knight, 80 NY2d 845, 847).
"Where the truth of the matter asserted in the proffered inconsistent statement is relevant to a core factual issue of a case, its relevancy is not restricted to the issue of credibility and its probative value is not dependent on the inconsistent statement" (People v Bradley, 99 AD3d at 937). Under such circumstances, the right to present a defense may "encompass[ ] the right to place before the [trier of fact] secondary forms of evidence, such as hearsay" (People v Gibian, 76 AD3d at 585, citing Chambers v Mississippi, 410 US at 294; see People v Esteves, 152 AD2d 406, 413-414). "Indeed where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice'" (People v Bradley, 99 AD3d at 937, quoting Chambers v Mississippi, 410 US at 302; see People v Robinson, 89 NY2d 648, 650; People v Abdul, 76 AD3d 563, 565; People v Oxley, 64 AD3d 1078, 1083-1084).
Applying these principles here, we conclude that the Supreme Court should not have precluded the defendant from calling Elliot Boyd, the brother of Lindsay, as a witness to impeach the testimony of Lindsay, who was the only witness who identified the defendant as one of the intruders. The court precluded Boyd's proffered testimony on the grounds that the defense failed to lay a proper foundation for impeachment with Boyd's testimony, that Boyd had been present in the courtroom during Lindsay's testimony, and that the testimony would be hearsay. However, defense counsel had failed to lay a proper foundation because he was not aware of the proffered testimony while Lindsay testified; it was only subsequent to Lindsay having completed his testimony that Boyd contacted counsel claiming that Lindsay had told him repeatedly, both immediately after the incident and in the ensuing months before trial, that he had not seen the intruders' faces because they wore masks. Moreover, the prosecutor initially volunteered to recall Lindsay to enable the defense to lay the foundation. In addition, the proffered testimony was in "substantial contradiction" to Lindsay's testimony that he recognized the defendant even though he had a scarf covering his face, because at some point during the incident the defendant's face became uncovered (People v Bradley, [*3]99 AD3d at 937 [internal quotation marks omitted]; Jerome Prince, Richardson on Evidence § 6-411 [Farrell 11th ed]; CJI2d[NY] Credibility of Witnesses—Inconsistent Statements). Therefore, the proffered testimony was sufficiently inconsistent to be relevant to the issue of Lindsay's credibility (see People v Bradley, 99 AD3d at 938; Jerome Prince, Richardson on Evidence § 6-411 [Farrell 11th ed]; CJI2d[NY] Credibility of Witnesses—Inconsistent Statements). Furthermore, testimony as to whether Lindsay told Boyd that he did not see the intruders' faces went directly to the heart of the most contested aspect of this case—whether the defendant was one of the intruders. As such, the precluded evidence was not only relevant to Lindsay's credibility, it was also "relevant to the very issues that the [trier of fact] must decide" (People v Knight, 80 NY2d 845, 847; see People v Jaikaran, 95 AD3d 903; People v Gomez, 79 AD3d 1065, 1067; People v Perez, 40 AD3d 1131, 1132; People v Ocampo, 28 AD3d 684, 686; People v Gibbs, 215 AD2d 689, 689-690). Further, there is no evidence that allowing Boyd to testify would have prejudiced the People notwithstanding that Boyd was present in the courtroom during Lindsay's testimony (see People v Scheck, 24 AD3d 574).
Under the circumstances present here, the preclusion of such material and exculpatory evidence deprived the defendant of a fair trial (see Chambers v Mississippi, 410 US at 302; People v Robinson, 89 NY2d at 650; People v Bradley, 99 AD3d at 938; People v Abdul, 76 AD3d at 565; People v Oxley, 64 AD3d at 1083-1084; cf. People v Fields, 89 AD3d 861, 862). Since the evidence of guilt was not overwhelming, this error was not harmless (see People v Crimmins, 36 NY2d 230, 241-242).
Accordingly, the judgment must be reversed and the matter remitted to the Supreme Court, Kings County, for a new trial.
Since there must be a new trial, we note that the defendant's contention that he was deprived of a fair trial based on the prosecutor's reference to his nickname, "Maniac," is partially unpreserved for appellate review (see CPL 470.05[2]) and, in any event, without merit. The defendant's nickname was used only a few times over the course of an approximately 10-day trial, and then only by Lindsay—the witness who testified that he knew the defendant by his nickname and who identified the defendant as one of the perpetrators—and by the prosecutor, in connection with Lindsay's testimony. Based on the circumstances, the use of the defendant's nickname, while improper, was not so egregious as to deprive the defendant of a fair trial (see People v Wilson, 141 AD3d 737, 739).
We need not reach the defendant's remaining contentions, including the contention raised in his pro se supplemental brief, in light of our determination.
ROMAN, J.P., COHEN, MILLER and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court