[41 NYS3d 477]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS HOEY, Appellant.

First Department, November 1, 2016

APPEARANCES OF COUNSEL

*Law Offices of James Kousouros*, New York City (*James Kousouros* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*David P. Stromes* and *Hilary Hassler* of counsel), for respondent.

## OPINION OF THE COURT

Feinman, J.

A jury convicted defendant of assault in the third degree (Penal Law § 120.00 [1]) as against his girlfriend and tampering with physical evidence (Penal Law § 215.40). The dispositive issue on this appeal is whether defendant's absence from colloquies before the trial judge relating to the admissibility of evidence of uncharged crimes and bad acts allegedly committed by defendant against his girlfriend, and others, deprived him of his right to be present at all material stages of the trial. Defendant was present when these issues were initially discussed at the hearing on his suppression motion, approximately a year before the matter went to trial before another justice. It was the trial court that ultimately ruled on the prosecution's *Molineux/Ventimiglia* application to admit evidence of uncharged crimes and bad acts on its case-in-chief (*People v Molineux*, 168 NY 264 [1901]; *People v Ventimiglia*, 52 NY2d 350 [1981]). Based on our review of the record, we find that defendant was not present before the trial court for all of the core proceedings related to the People's application. Furthermore, because the record is silent as to the trial court's rationale as to some of its rulings, we are unable to meaningfully review whether these were proper exercises of discretion. Thus, we reverse defendant's conviction and remand the matter for a new trial and a de novo *Molineux/Ventimiglia* hearing.

## Factual and Procedural Background

During the evening of March 30, 2012, a neighbor in defendant's apartment building heard a stairwell door slam, the sound

of running and scuffling in the hall, and a female voice saying, "[O]h, no, no, please don't." The sounds continued, and the door slammed twice more. The neighbor stepped into the hallway and heard whimpering on the other side of the stairwell fire door. She pushed open the door to find defendant standing on the other side, holding the wrist of a woman who appeared to be attempting to ascend the stairs toward the next floor. Defendant told her that everything was "okay" and that they had fallen down the stairs. However, the woman's face was "covered in blood," and there was "pooled blood" on the floor and swipes of blood on the stairwell walls. The neighbor said she was going to call the police. When she returned, she saw a trail of blood from the stairwell to defendant's apartment door. She heard sobbing from behind the door and a male voice saying, "[H]urry up, she's calling 911." Defendant opened his apartment door and wiped up some of the blood spattered outside the doorway.

Over the course of the next 20 to 45 minutes, six officers and a police sergeant arrived on the scene, as well as two EMS responders. Defendant was asked by the first two officers to come into the hallway, and remained outside his apartment with at least one officer until his arrest. His girlfriend stayed in the apartment. Initially she did not respond to questions other than to say that she did not want defendant arrested. Eventually she stated that nothing had happened and that she had fallen. The officers described her as having wet or damp hair, and some saw that her face was also wet or damp and that there were the beginnings of swelling or bruising on her face. Some were able to look briefly at the top of her head before she demanded that they stop. Some saw blood matted in her hair. She repeatedly requested that the officers and the sergeant leave. She declined assistance from the EMS responders and refused to be examined.

Defendant was asked several times what had happened. He said that his "wife" had gone out for a couple of drinks, and that he had gone out, and that they had gotten into a fight. He answered variously that the blood had come from picking or scratching his nose, or that he did not know its origins. Once defendant asked for an attorney, questioning ceased. Shortly thereafter, defendant was arrested.

In July 2013, the parties, including defendant, appeared for a hearing on defendant's motion to suppress his statements to the police (*People v Huntley*, 15 NY2d 72 [1965]). At the hear-

ing, the People also presented their lengthy *Molineux/ Ventimiglia* application. The court entertained extensive oral argument on both motions, and defendant's counsel was also permitted to submit a written response. On August 1, 2013, the hearing court issued its decision on the suppression motion, ruling, in relevant part, that defendant's statements to the first two police officers on the scene were voluntary and that he was not in custody at the time and had not yet asked for an attorney. The court did not issue a decision addressing the *Molineux/Ventimiglia* issues.

Defendant's trial commenced in May 2014 before a different judge, after two days of on-the-record pretrial conference. On more than one occasion, the trial court referred to an earlier "informal" off-the-record pretrial conference wherein "potential issues," and "many" things were discussed, including "rulings." The trial court assured the parties that it would "clearly give," as "required," "sua sponte," instructions "on some of the *Molineux* issues."

Before the jury entered on the second day of trial, the People requested permission to question the victim's cousin about a previous phone call wherein the victim indicated that although she had been injured, she did not want to get defendant in trouble. In making the application, the prosecutor assured the court that the People were mindful that some testimony had been "sanitized out" and that they were not challenging that ruling. In response, the court noted for the record that there had been "an extensive conversation" that "led to an unofficial ruling" on *Molineux*, culminating in a written summary prepared by the People, and that later it would "dictate very briefly an outline of our discussions . . . and the ruling[ ]."

The next morning, the trial court directed that the *Molineux* summary, which "[e]veryone" agreed correctly reflected the court's rulings, be made court exhibit No. II.

The record reflects that the trial court gave limiting instructions to the jury during the testimony of the victim's cousin and father and in the final jury charge. The record also shows that when the prosecution again sought to expand the scope of the ruling, the trial court denied the request in its entirety, noting that the additional evidence would likely be more prejudicial than probative.

### Discussion

Criminal defendants have a fundamental right under the State and Federal Constitutions to be present at all material

stages of trial, that is to say, whenever witnesses are called or evidence is presented against the defendant, as well as when the defendant's presence " 'might bear a substantial relationship to a defendant's opportunity better to defend himself at trial' and the stage of the criminal proceeding is 'critical' to its outcome" (*People v Sprowal*, 84 NY2d 113, 116-117 [1994], quoting *Kentucky v Stincer*, 482 US 730, 739, 745-746 [1987]; *see Snyder v Massachusetts*, 291 US 97, 105-107 [1934]).

In New York, Criminal Procedure Law § 260.20 also provides that a defendant "must" be present during the trial of an indictment. This protection accrues in ancillary proceedings where factual matters are at issue about which a defendant might have " 'peculiar knowledge that would be useful in advancing the defendant's or countering the People's position' " (*People v Spotford*, 85 NY2d 593, 596 [1995], quoting *People v Dokes*, 79 NY2d 656, 660 [1992]). "[T]he right does not rest exclusively on defendant's potential contribution to the proceedings" (*People v Morales*, 80 NY2d 450, 456 [1992]). Rather, it is based on "the effect that defendant's absence might have on the opportunity to defend" (*id.*).

Absence from a stage of trial at which a defendant's presence is required violates the Confrontation and Due Process Clauses as well as New York's statutory law; it is a fundamental error and, absent an exception, requires reversal of the verdict (*see People v Spotford*, 85 NY2d at 597; *People v Dokes*, 79 NY2d at 662; *People v Cain*, 76 NY2d 119, 124 [1990]; *People v Sanchez*, 270 AD2d 15, 17 [1st Dept 2000], *appeal withdrawn* 95 NY2d 803 [2000]). On the other hand, there is no error where a defendant has not attended an ancillary proceeding involving only questions of law and procedure, since his or her presence would be "useless" (*People v Rodriguez*, 85 NY2d 586, 591 [1995] [internal quotation marks omitted]; *see People v Sloan*, 79 NY2d 386, 392 [1992]).

The People do not dispute that defendant was absent from the "informal" pretrial conference with the trial court. They disagree that defendant was required to be present. The People argue that defendant was present when the attorneys initially made their *Molineux/Ventimiglia* arguments a year earlier before the suppression court, and had an opportunity to participate at that time as well as to offer input when his attorney drafted the opposition memorandum submitted to the suppression court. In effect, they argue that the attorneys' informal conference with the trial court merely repeated the

earlier hearing at which defendant was in attendance. They also argue that the trial court's *Molineux/Ventimiglia* rulings were made a part of the record during the early stages of the trial, and that defendant had an opportunity to review and challenge them first when the trial court referenced the existence of the written "summary" and again when that document was made a court exhibit. However, the record does not reflect that defendant was given an opportunity at any point to review the summary. Additionally, although the trial court made its written rulings a court exhibit, the record is devoid of any recitation of the reasoning behind the rulings, i.e., that the evidence was probative of defendant's motive, intent or identity, the absence of mistake or accident, or a common scheme or plan (*see People v Allweiss*, 48 NY2d 40, 47 [1979]). Notably absent is any indication that the court found the evidence relevant and admissible because its probative value as to one of the recognized *Molineux/Ventimiglia* exceptions outweighed its prejudicial effect (*see id.*).

The People suggest that this matter is procedurally similar to *People v Liggins* (19 AD3d 324 [1st Dept 2005], *lv denied* 5 NY3d 853 [2005]), and that we should follow the reasoning of *Liggins* to find that there was no error in defendant's absence from the informal conference with the trial court. In *Liggins*, the *Sandoval** and *Molineux/Ventimiglia* hearings were conducted in several stages, including the proffering of a written submission by the defense attorney. The defendant was present only for the initial segment at which the arguments on admissibility were presented. We held that the defendant's presence at the initial segment was critical, because he could offer meaningful input, and that his presence was not required at the subsequent stages involving discussions of law and procedure (*see People v Rivera*, 201 AD2d 377 [1st Dept 1994], *lv denied* 83 NY2d 875 [1994]).

What transpired in the case at bar is not the same as what happened in *Liggins*. Here, the arguments on admissibility were conducted before two different judges, a year apart, and defendant was not present the second time, when the attorneys conferred with the judge who considered their arguments and made rulings. Furthermore, some of the discussions were not even recorded, occurring as they did in the trial judge's chambers or robing room without a court reporter. These are

---

* *People v Sandoval* (34 NY2d 371 [1974]).

significant differences. It is not clear, for instance, that the papers originally submitted to the hearing court were also submitted to the trial court, or whether the trial court considered them. Nor is it clear whether the trial court read the hearing transcript or conducted its own de novo hearing. Even if the trial court considered the same papers and read the hearing transcript, the record is silent as to what particular facts were emphasized at the hearing before the trial court, what the court's concerns were, and its reasons for making its rulings. The informal pretrial hearing was not, therefore, a sort of reargument of purely legal issues at which defendant could have nothing to contribute (*cf. People v Dokes*, 79 NY2d at 658-659 [the mere fact that the defendant was present for a *Sandoval* hearing held during an earlier proceeding to try him on the same charges did not negate the necessity for his attendance at the second hearing in a new trial; the second hearing was de novo, and the benefits from the first hearing did not carry over to the second]). Thus, it cannot be said with any degree of certainty that defendant's presence at the pretrial *Molineux/Ventimiglia* hearing before the trial court would have been "useless, or the benefit but a shadow" (*People v Sloan*, 79 NY2d at 392 [internal quotation marks omitted]).

Additionally, although the People suggest that defendant had an opportunity to review the rulings shortly after the trial court referred to them and then had them marked as a court exhibit, the record does not indicate that defendant was given an opportunity to review and discuss the *"Molineux* summary" with his attorney before it was marked as a court exhibit.

For all these reasons, we conclude that defendant's presence was required at the hearing before the trial court (*compare People v Guerrero*, 27 AD3d 386 [1st Dept 2006], *lv denied* 7 NY3d 756 [2006] [no error where the court put its decision on the record during the calendar call, not attended by the defendant, because the court had already decided the motion]; *People v Martinez*, 261 AD2d 143, 143 [1st Dept 1999], *lv denied* 93 NY2d 1022 [1999] [although the defendant was not present at the preliminary *Sandoval* discussion, the court held an "essentially . . . de novo hearing in his presence," and the defendant had the opportunity to object on the record prior to the final ruling]). Defendant's presence during oral argument before the suppression court a year earlier cannot substitute for his presence at the *Molineux/Ventimiglia* hearing before the trial court, which heard and then ruled on the application. Ac-

cordingly, we reverse defendant's conviction and order a new trial (*see People v Dokes*, 79 NY2d 656 [1992]).

Upon remand, the trial court should conduct a de novo *Molineux/Ventimiglia* hearing. In doing so, it should place on the record its findings as to which uncharged crimes and bad acts are admissible because they are relevant to a pertinent issue in the case other than defendant's criminal propensity toward violence against the victim (*see People v Till*, 87 NY2d 835, 836 [1995]). The relevant *Molineux/Ventimiglia* exception, or exceptions, if more than one is applicable, should be noted on the record, as well as what evidence is needed to complete the narrative of the events charged in the indictment or to provide necessary background (*see People v Morris*, 21 NY3d 588, 594 [2013]). The court should expressly recite its discretionary balancing of all the factors (*see People v Bradley*, 83 AD3d 1444 [4th Dept 2011], *revd on other grounds* 20 NY3d 128 [2012]).

The record should be made clear as to which of the *Molineux/Ventimiglia* exceptions the court is invoking for each of the various uncharged crimes and bad acts it may decide to admit and whether the necessity and probative value of the evidence is found to outweigh the prejudice to defendant (*see People v Cook*, 93 NY2d 840 [1999]; *People v Till*, 87 NY2d at 837). It goes without saying that the record should also show that in each instance, proper limiting instructions are given to the jury (*People v Morris*, 21 NY3d 588 [2013]).

In light of the foregoing, we need not reach defendant's ineffective assistance of counsel claim. However, we address some of the other issues raised by defendant.

Upon retrial certain comments in the prosecutor's summation should not be repeated because they went beyond merely being responsive to defense counsel's summation. More specifically, while the prosecutor is free to respond to defense counsel's comments about the failure of the victim to testify, the response must be evidence-based and may not improperly convey the prosecutor's personal opinion of defendant's guilt.

Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient (*see People v Schulz*, 4 NY3d 521, 529 [2005]). Nor was the verdict against the weight of the evidence, notwithstanding the absence of testimony from the victim (*see People v Danielson*, 9 NY3d 342 [2007]). In total, the evidence, which included both direct and circumstantial evidence of defendant's guilt of both crimes, was not seriously impeached.

Finally, we find that the suppression court properly ruled that defendant's statements made to Police Officer Williams were not the product of custodial interrogation and were therefore admissible (*see People v Yukl*, 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]; *People v Dillhunt*, 41 AD3d 216 [1st Dept 2007], *lv denied* 10 NY3d 764 [2008]).

Accordingly, the judgment of the Supreme Court, New York County (Richard D. Carruthers, J., at suppression hearing; Daniel P. FitzGerald, J., at jury trial and sentencing), rendered February 27, 2015, convicting defendant of tampering with physical evidence and assault in the third degree, and sentencing him to an aggregate term of 1⅓ to 4 years, should be reversed, on the law, and the matter remanded for a new trial and a de novo hearing addressing the prosecution's *Molineux/Ventimiglia* application.

SWEENY, J.P., ACOSTA, KAPNICK and KAHN, JJ., concur.

Judgment, Supreme Court, New York County, rendered February 27, 2015, reversed, on the law, and the matter remanded for a new trial and a de novo hearing addressing the prosecution's *Molineux/Ventimiglia* application.